IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Innovative Container Company, LLC, ) | |
| and Innovative Container Services, LLC, ) | C.A. No. 6:05-280-HMH |
| ) | |
| Plaintiffs, ) | |
| ) | **OPINION & ORDER** |
| vs. ) | |
| ) | |
| Son Light Trucking, Inc., Craig Raul ) | |
| Bunton, and Julian Cardona, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the parties' cross motions for partial summary judgment. Innovative Container Company, LLC ("ICC") and Innovative Container Services, LLC ("ICS") (collectively "Plaintiffs") move for summary judgment on the issue of liability on their negligence claims in counts 1, 2, and 4. Son Light Trucking, Inc. ("Son Light"), Craig Raul Bunton ("Bunton"), and Julian Cardona ("Cardona") (collectively "Defendants") move for summary judgment on the Plaintiffs' lost profits and punitive damages claims. After thorough consideration of the parties' arguments, the pleadings and evidence submitted in support thereof, and the applicable law, the court denies the Plaintiffs' motion for partial summary judgment, and grants in part and denies in part the Defendants' motion for partial summary judgment.

**I. FACTUAL BACKGROUND**

This action arises from a motor vehicle accident that occurred on I-85 near Braselton, Georgia on May 12, 2003. (Pls.' Mem. Supp. Summ. J. Ex. A (Son Light's Admissions), Ex. B (Cardona's Admissions), & Ex. C (Bunton's Admissions).) On that date, Bunton was

1

driving a tractor trailer for Son Light when he struck the rear of a flatbed truck being driven by David Roper ("Roper"). (Id. Ex. D (Roper Dep. 24-25, 31-32).)

The Plaintiffs are in the business of selling and leasing manufactured or reconditioned industrial containers for the transportation of non-hazardous dyes and liquids. (Pls.' Mem. Opp'n Defs.' Summ. J. Ex. 16 (Chad Odom ("Odom") Decl. ¶ 2).) In January 2003, the Plaintiffs hired Roper Pattern and Mold ("Roper Pattern") in Alabama to design a mold for 30-gallon and 35-gallon containers. (Id. Ex. 16 (Odom Decl. ¶ 15).) At the time of the accident, Roper was transporting the Plaintiffs' mold on the flatbed truck. (Pls.' Mem. Supp. Summ. J. Ex. D (Roper Dep. 24-25).) As a result of the accident, the mold was damaged, and the Plaintiffs were unable to begin manufacture of the 30-gallon and 35-gallon containers until June 19, 2003. (Pls.' Mem. Opp'n Defs.' Summ. J. Ex. 18 (Roper Dep. at 39).) The Plaintiffs allege that because of the damage to the mold, they lost eight customers who had orally committed to purchasing 30-gallon and 35-gallon containers from the Plaintiffs. (Id. Ex. 16 (Odom Decl. ¶ 18).)

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-party is to be believed and all justifiable inferences must be drawn in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

### B. Plaintiffs' Summary Judgment Motion

The Plaintiffs move for summary judgment on the issue of liability on their negligence claims against Bunton as the driver of the tractor trailer, Son Light as Bunton's employer, and Cardona as the owner and independent operator of the truck driven by Bunton.

### 1. Choice of Law

As an initial matter, the court must first determine what law to apply in deciding the Plaintiffs' motion for partial summary judgment. The Plaintiffs allege that South Carolina law applies to the negligence causes of action because the loss occurred in South Carolina, where the Plaintiffs hold title to the mold and the Plaintiffs' property and business were damaged. (Pls.' Mem. Opp'n Defs.' Summ. J. 9.) As a result of the damage to the mold, the Plaintiffs allege they suffered lost profits in South Carolina. The Defendants allege that Georgia law applies because that is where the accident occurred and where the mold was damaged. (Defs.' Reply Supp. Summ. J. 2.)

In a case where subject matter jurisdiction is based on diversity, a federal court "must apply the choice-of-law rules of the state in which it sits" in determining what state's law applies. Resource Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th

3

Cir. 2005). "It is well established in South Carolina that in tort cases the law of the place where the injury was occasioned or inflicted, governs in respect of the right of action, and the law of the forum in respect to matters pertaining to the remedy only." Dawkins v. State, 412 S.E.2d 407, 408 (S.C. 1991) (internal quotation marks omitted).

The Plaintiffs rely on Lister v. NationsBank of Delaware, N.A., 494 S.E.2d 449, 455 (S.C. Ct. App. 1997), which involved a fraudulent misrepresentation claim. The court found that the injury was inflicted in South Carolina because, although the representation occurred in Aruba, the plaintiff's financial loss occurred in South Carolina. Id. In accident cases, however, the injury occurs at the place of the accident. See Alday v. Tecphy Div. Firminy, 10 F. Supp. 2d 562, 563 (D.S.C. 1998) (finding South Carolina law applicable to tort action "because the accident occurred in South Carolina"). In the case at bar, the accident and the damage to the mold occurred near Braselton, Georgia. As such, the injury to the Plaintiffs' property was inflicted in Georgia, and Georgia law applies to the negligence causes of action.

### 2. Liability under the Negligence Causes of Action

Under Georgia law, in order to make a claim for negligence, a plaintiff must establish

(1) a legal duty to conform to a standard of conduct raised by law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) loss or damage to plaintiff's legally protected interest.

Snellgrove v. Hyatt Corp., 625 S.E.2d 517, 520 (Ga. Ct. App. 2006).

The Plaintiffs allege that there is no genuine issue of material fact that

(1) Bunton's negligence was the proximate cause of the collision and the damages to the mold; (2) Son Light has admitted that under the doctrine of respondeat superior, Son Light . . . is vicariously liable in this lawsuit for any damages to either Plaintiff proved to be proximately caused by the negligence of . . . Bunton in connection with

4

> the motor vehicle accident that is the subject of this action; and (3) Cardona has admitted that Bunton was acting as his employee.

(Pls.' Mem. Supp. Mot. Partial Summ. J. 4 (internal quotation marks omitted).)

In support of their motion, the Plaintiffs argue that it is undisputed that "while traveling in the right hand lane of I-85, Bunton crashed into the rear of a flatbed truck and trailer [driven by Roper] which was traveling at a lawful speed of sixty-five miles per hour in the same lane." (Id. 4.) The Defendants allege that liability is disputed because Bunton testified that Roper was going no more than forty miles an hour and that a vehicle in front of Bunton's truck swerved to avoid Roper, giving Bunton no time to avoid a collision with the flatbed truck. (Defs.' Mem. Opp'n Pls.' Summ. J. Ex. 1 (Bunton Aff. ¶¶ 3-4) & Ex. 2 (Bunton Dep. 65-66, 108).) The Defendants submit that Bunton was presented with a sudden emergency or an unavoidable accident.

In response, the Plaintiffs allege that these alleged facts only shift some fault for the accident to Roper because forty miles an hour is a lawful rate of speed for the section of I-85 where the accident occurred, and a vehicle swerving around Roper does not relieve Bunton of liability for striking Roper from the rear. (Pls.' Reply Supp. Summ. J. 2-3 & Ex. B (Walker Dep. 60).) Forty miles an hour is the minimum speed limit for the section of I-85 where the accident occurred. (Id. Ex. B (Walker Dep. 60).) However, by implication, Bunton's testimony that Roper was traveling no more than forty miles an hour suggests that Roper may have been traveling less than forty miles an hour. Further, the Defendants argue that Roper's speed and a vehicle allegedly swerving in front of Bunton to avoid Roper presented a sudden emergency or unavoidable accident.

The court finds that, after viewing the facts in the light most favorable to the Defendants, there are genuine issues of material fact concerning whether Roper was traveling below the minimum speed limit for the section of I-85 where the collision occurred. This fact is material because if Roper was driving below the minimum speed limit, a jury could find that Bunton was not the proximate cause of the accident because Bunton could not avoid the collision due to Roper driving at a slow speed, which impeded the flow of traffic. As such, the court denies the Plaintiffs' motion for partial summary judgment on liability for the negligence causes of action.

### C. Defendants' Partial Summary Judgment Motion

The Defendants move for summary judgment on the Plaintiffs' claims for lost profits and punitive damages.

#### 1. Choice of Law

As an initial matter, the court must first determine which state's law applies to the Defendants' motion for partial summary judgment on the Plaintiffs' lost profits and punitive damages claims. As noted above, the accident occurred in Georgia. However, this action was brought in South Carolina. The Plaintiffs allege that South Carolina law applies because the injury occurred in South Carolina and, in the alternative, as the forum state, South Carolina law applies "to matters pertaining to the remedy." Dawkins, 412 S.E.2d at 408

(internal quotation marks omitted). As set forth above, the injury was inflicted in Georgia.[1]
Therefore, the Plaintiffs' first argument fails.

With respect to the second argument, the court must determine whether punitive damages and lost profits pertain to the remedy such that South Carolina law should apply. In Rauton v. Pullman Co., the Supreme Court of South Carolina addressed this question as follows:

> Upon the question of whether the measure of the damages for a tort, committed in one state and sued on in another, is determinable by the law of the forum or by the law of the place where the tort was committed, the great weight of authority supports the doctrine that the lex loci delecti controls. The measure of damages is regarded as pertaining to the substantive, rather than to the merely remedial, rights of the injured person.

191 S.E. 416, 419 (S.C. 1937). However, the Plaintiffs argue that Rauton is inapplicable because in the present case punitive damages and lost profits are not substantive, but remedial rights. In Rauton, the injury occurred in Mexico and pursuant to a Republic of Mexico statute, damages were limited. Id. at 421. The Plaintiffs argue that the court in Rauton considered damages substantive because the applicable damages laws had been codified.

---

[1] The Plaintiffs argue that there is no basis for Georgia law to apply to the negligent retention, supervision, entrustment, and lack of control claims alleged in counts 3 and 5 of the Plaintiffs' complaint. However, this argument also fails. When an injury occurs in one state as a result of negligent acts in another state, the substantive law of the state in which the injury was inflicted applies. Thorton v. Cessna Aircraft Co., 886 F.2d 85, 87 (4th Cir. 1989); see also, Swearngin v. Sears Roebuck & Co., 376 F.2d 637, 639 (10th Cir. 1967) ("The general rule is that where an act of omission or commission occurs at one place and resulting death, personal injury, or damage takes place at another, the situs of the actionable wrong is the place at which the death, personal injury or property damage takes place." (Internal quotation marks omitted)). As such, although the allegedly negligent acts supporting the Plaintiffs' claims in counts 3 and 5 occurred in Texas, where Son Light and Cardona are located, the alleged injury as a result of those negligent acts was inflicted in Georgia. Therefore, Georgia law applies.

7

The court disagrees. Damages in a tort action are "controlled by the law of the place where the tort occurred." Hester v. New Amsterdam Cas. Co., 287 F. Supp. 957, 972 (D.S.C. 1968). In Hester, the court found that the place of injury was Florida, and as such, Florida law "applie[d] not only to actual damages but also to punitive damages. The reason for this conflicts rule is based on the philosophy that damages pertain to the substantive right as opposed to remedial rights of the injured parties." Id. at 972, 976. However, the court made no distinction or reference regarding whether Florida law on damages was codified. Therefore, the Plaintiffs' attempt to distinguish Rauton on the basis that damages were substantive in Rauton because the applicable damages law had been codified fails. The Plaintiffs do not point to a single South Carolina case or a case applying South Carolina law that reaches a different conclusion. As such, the court finds that Georgia law applies to the Plaintiffs' claims for lost profits and punitive damages.

## 2. Lost Profits

Under Georgia law, "[l]oss of prospective profits is ordinarily too remote for recovery." MTW Inv. Co. v. Alcovy Props., Inc., 491 S.E.2d 460, 462 (Ga. Ct. App. 1997) (internal quotation marks omitted). "While recovery for lost profits is not necessarily precluded in a tort action, such loss must be capable of reasonably accurate computation." Johnson County School Dist. v. Greater Savannah Lawn Care, No. A05A1591, 2006 WL 549262, at * 2 (Ga. Ct. App. Mar. 8, 2006) (internal quotation marks omitted). However, "where the type of business and history of profits make the calculation of profits reasonably ascertainable, lost profits may be recovered." Id. (internal quotation marks omitted).

"Ordinarily, lost profits may be recovered by a business only if the business has a proven track record of profitability." Id. (internal quotation marks omitted).

The Plaintiffs allege that they lost eight customers, who had orally committed to purchasing 30-gallon or 35-gallon containers, because of the accident. (Pls.' Mem. Opp'n Defs.' Summ. J. Ex. 16 (Chad Odom ("Odom") Decl. ¶ 18).) As a result of the damage to the mold in the accident, delivery of the mold was delayed thirty-nine days. (Id. Ex. 18 (Roper Dep. at 39).) The Plaintiffs have produced letters from six of the eight customers stating that had the mold been available, each of the six would have purchased 30-gallon or 35-gallon containers in specific amounts per month, which varied by customer. (Id. Ex. 16 (Odom Decl. ¶ 20 & Ex. A (Letters from Customers).) In addition, seven of the eight customers, including the two customers that did not send letters, testified at their depositions that they would have purchased 30-gallon or 35-gallon containers from the Plaintiffs. (Id. 7.)

The Defendants argue that the court should grant summary judgment to them on the Plaintiffs' future lost profits claim because lost profits are too speculative and remote. In support of this argument, the Defendants allege that the Plaintiffs did not have a history of profitability for selling 30-gallon or 35-gallon containers because when the accident occurred, the Plaintiffs had not yet manufactured any 30-gallon or 35-gallon containers. (Defs.' Mem. Supp. Summ. J. 3.) At the time of the accident, the Plaintiffs manufactured 57-gallon containers, but not 30-gallon or 35-gallon containers. (Pl.'s Mem. Opp'n Defs.' Summ J. Ex. 16 (Odom Decl. ¶ 14).) However, the Plaintiffs sold or leased reconditioned 30-gallon and 35-gallon containers. (Id. Ex. 16 (Odom Decl. ¶ 14).) Further, prior to the accident, ICC operated at a loss. (Defs.' Mem. Supp. Summ. J. 3.) Moreover, the Plaintiffs had no

9

contractual agreements with the eight alleged customers. (Id.) Notably, one of the eight customers testified that he decided to purchase 30-gallon or 35-gallon containers from another source because it was convenient to his business. (Id. Ex. 1 (Jack Thomas Dep. 20-21).) For all of these reasons, the Defendants argue that the Plaintiffs' alleged lost profits are too speculative and remote.

Despite the letters and deposition testimony in which the customers state that they would have purchased 30-gallon or 35-gallon containers in specific amounts on a monthly basis, the Plaintiffs have provided no evidence that they have a proven track record of profitability. ICS has been in business since early 2001, and ICC has been in business since early 2002. (Pls.' Mem. Opp'n Defs.' Summ. J. Ex. 16 (Odom Decl. ¶¶ 7-8).) The Plaintiffs do not dispute the Defendants' allegation that ICC does not have a history of profitability. There is no evidence concerning the profitability of ICS.

In Greater Savannah Lawn Care, the plaintiff sought to recover lost profits caused by a motor vehicle accident that damaged some of its lawn care equipment. Although its predecessor was profitable, Greater Savannah Lawn Care was a "newly established company [that] had been operating at a loss." 2006 WL 549262, at *2. Greater Savannah argued that the lost profits should survive summary judgment because its predecessor was profitable and it was still absorbing start-up costs. Id. Further, Greater Savannah submitted that its owner had many years of experience in lawn care; the budget forecasted profitability; money was diverted from marketing to purchase another truck and additional lawn care equipment; and its ability to provide lawn care service was "severely impaired" as a result of the accident. Id. However, the court concluded that "this collection of information fail[ed] to provide the

10

required specificity for calculating an amount of Greater Savannah's lost profits directly traceable to a wrongful act by the defendants." Id.

In addition, in Molly Pitcher Canning Co. v. Central of Georgia Railway Co., the Court of Appeals of Georgia found that lost profits were not recoverable because, although the plaintiff had been in the canning business for many years, "[t]he proposed cling peach canning operation [damaged in the collision] was, at the time of the collision, in its incipiency, by definition a newly-begun enterprise." 253 S.E.2d 392, 397 (Ga. Ct. App. 1979). Thus, the court concluded that under those circumstances, "there plainly exist[ed] no basis upon which a reasonably accurate computation of lost profits might be made . . . ." Id.

The Plaintiffs have not provided the court with any evidence concerning their history of profitability. Further, the Plaintiffs were expanding their business to produce 30-gallon and 35-gallon containers. At the time of the accident, the Plaintiffs had not commenced manufacturing this new line of containers. Therefore, there was no history of profitability with respect to the manufacture of 30-gallon and 35-gallon containers. As such, the court finds that, based on the lack of a history of profitability for manufacturing 30-gallon and 35-gallon containers and the fact that the manufacture of 30-gallon and 35-gallon containers was a new enterprise, the calculation of lost profits is not reasonably ascertainable. Therefore, the Defendants' motion for summary judgment on the prospective lost profits claim is granted.

### 3. Punitive Damages

Under the Official Code of Georgia Annotated Section 52-12-5.1(b), "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud,

11

wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." Conscious indifference to consequences "relates to an intentional disregard of the rights of another, knowingly or wilfully disregarding such rights." CSX Transp., Inc. v. West, 523 S.E.2d 63, 66 (Ga. Ct. App. 1999) (internal quotation marks omitted). "[R]ecovery of punitive damages may be authorized where the circumstances of the tort show an entire want of care and an indifference to consequences. Wilful and intentional misconduct is not essential." Id. (internal quotation marks omitted)

The Defendants allege that the Plaintiffs seek to recover punitive damages against Son Light on the basis of J.B. Hunt Transport, Inc. v. Bentley, 427 S.E.2d 499 (Ga. Ct. App. 1993). In Bentley, a highway worker and his wife sued a truck driver, a trucking company ("Hunt"), and Hunt's insurer to recover for injuries suffered when the highway worker was struck by a truck. Id. at 501. The evidence showed that Hunt did not comply with the applicable safety regulations as Hunt was a "habitual violator" of the rule concerning hours-in-service. Id. at 504-05. Further, Hunt operated a "forced dispatch system, under which drivers could be fired for refusing a load." Id. at 505 (internal quotation marks omitted). In addition, after investigation into the accident began, Hunt destroyed the driver's logbook, which would have shown whether the driver exceeded the permitted driving time. Id. at 505. Also, the pre-trip and post-trip vehicle inspection report which would have indicated the condition of the truck was destroyed. Bentley, 427 S.E.2d at 505. Moreover, Hunt did not produce the truck driver as a witness. Id. Based on this evidence, the court upheld a jury's punitive damages award against Hunt because the jury could find that Hunt "exhibited a conscious indifference to the consequences of putting a tired driver, at the risk of losing his

12

job if he did not comply, and/or a defective tractor-trailer out on the highway, with a schedule for delivery which prompted maintaining the maximum allowable speed even in construction areas." 427 S.E.2d at 505.

The Defendants argue that they are entitled to summary judgment on the Plaintiffs' claims for punitive damages because "there is no evidence that Son Light is an [sic] habitual offender of the hours of service rule, or of any other regulations contained in the Federal Motor Carrier Safety Regulations. Nor does Son Light impose a 'forced dispatch' policy on its drivers." (Defs.' Mem. Supp. Summ. J. 10.)[2] The Plaintiffs counter that, as in Bentley, Son Light destroyed Bunton's logs after it received notice of the Plaintiffs' claims. (Pl.'s Mem. Opp'n Defs.' Summ. J. Ex. 13 (Hernandez Dep. 80-82 & Ex. 9).) As a result, there is no record of how many(of the total 1501) miles Bunton drove on each day on his trip from Texas to Braselton, Georgia. (Id. 31.) Moreover, the Plaintiffs allege that Bunton had a practice of exceeding the maximum driving miles limit under the applicable Federal Motor Carrier Safety Regulations ("FMCSR"), 49 C.F.R. 395.0 et. seq.,[3] because the records that

---

[2]The Defendants move for summary judgment on the Plaintiffs' claim for punitive damages. However, the memorandum in support of their motion only alleges that the Defendants are entitled to summary judgment on the Plaintiffs' punitive damages claim against Son Light. Further, in the Defendants' reply, they allege that they are entitled to summary judgment on the claim for punitive damages against Bunton. No where is Cardona mentioned. As the Defendants submit no evidence to support a motion for summary judgment on the Plaintiffs' claim for punitive damages from Cardona, the court will not address any punitive damages claim as to Cardona.

[3] The FMCSR regulations pertaining to hours-of-service are lengthy and contain various hour requirements with numerous exceptions and exemptions. Neither the Plaintiffs nor the Defendants identify the applicable FMCSR regulations. Therefore, it is unclear to the court under which section(s) the Defendants are arguing that Bunton and Son Light complied with the regulations, and under which section(s) the Plaintiffs are arguing that Bunton and Son Light did not comply with the regulations. However, the court declines to address this issue

13

have been produced by the Defendants show that Bunton "exceeded the maximum driving miles on four of five days preceding the collision, and he exceeded the maximum of 3800 miles allowed in a week on at least two occasions in the weeks prior to the accident." (Pls.' Mem. Opp'n Defs.' Summ. J. 33.)  As such, the Plaintiffs submit that Son Light was a habitual offender of the hours-of-service rule.

According to Cardona, under the applicable regulations at the time of the accident, a driver could drive up to seventy hours in a consecutive eight-day period. (Defs.' Reply Supp. Summ. J. Ex. 4 (Cardona Aff. ¶ 3).)  Further, Fred Hernandez ("Hernandez") of Son Light testified that under the applicable regulations, each day, a driver can drive "whatever [he] could do within a 10-hour segment." (Pls.' Mem. Opp'n Defs.' Summ. J. Ex. 15 (Hernandez Dep. 105).)  Cardona testified that a driver can drive about 3800 miles a week or roughly 600 miles a day within the applicable regulations.  (Id. Ex. 10 (Cardona Dep. 28-29).)

The Plaintiffs argue that, according to the trip envelopes, "Bunton clearly violated these standards on four of the five days preceding this accident, as he drove 686 miles on May 7; 635 miles on May 8; 627 miles on May 9; and 731 miles on May 11." (Pls.' Mem. Opp'n Defs.' Summ. J. 33 (Bunton Dep. Ex. 8 (Trip Envelope).)  In addition, the Plaintiffs allege that

> [u]sing Fred Hernandez's estimate that Bunton could drive 50 to 60 miles an hour as a rule of thumb, Bunton drove between 11.4 and 13.7 hours on May 7, between 10.6 and 12.7 hours on May 8, between 10.5 and 12.5 hours on May 9, between 12.2 and 14.6 hours on May 11, and between 3.5 and 4 hours during the early morning hours of May 12 after working all night.

---

because, as discussed in the text of this order, there is inconsistent testimony from the Defendants regarding whether Bunton's mileage exceeded the hours-of-service requirements in the FMCSR regulations. As such, genuine issues of material fact exist.

14

(Id. 30.)  In response, Cardona submitted an affidavit testifying that he was incorrect in his calculations, and that 4200 miles per week is allowed.  (Defs.' Reply Supp. Summ. J. Ex. 4 (Cardona Aff. ¶ 3).)  Hernandez submitted an affidavit testifying that, depending on how much rest a driver has had, a driver may be able to exceed ten hours per day under the regulations.  (Id. Ex. 3 (Hernandez Aff. ¶ 2).)

Based on the foregoing, viewing the facts in the light most favorable to the Plaintiffs, the court finds that there is an genuine issue of material fact concerning Son Light's compliance with the hours-of-service rule.  There is evidence on which a jury could find that Son Light exhibited "a conscious indifference" to the consequences of exceeding the hours-of-service requirements by putting a tired driver on the road and destroyed the logbooks to prevent uncovering this information.

In addition, in the Defendants' reply in support of their motion for partial summary judgment, they argue that they are entitled to summary judgment on the Plaintiffs' claim for punitive damages against Bunton.  The Defendants allege that even assuming that Bunton was grossly negligent, the Plaintiffs are not entitled to punitive damages.  Further, the Defendants claim that the fact that Bunton was cited after the accident for driving too fast for conditions and following too closely does not warrant an award of punitive damages.

The Defendants rely on Coker v. Culter, 431 S.E.2d 443, 445 (Ga. Ct. App. 1993), in which the Georgia Court of Appeals affirmed the trial court's grant of the defendant's motion for summary judgment with respect to a punitive damages claim against a driver involved in a motor vehicle collision.  In Coker, the driver was traveling "40 mph in a 35 mph zone; water was standing on the road; visibility was poor; [and] his car hydroplaned and crossed over the

15

centerline." Id. at 444. In addition, "two passengers in the car were drinking but [the driver], who had drunk beer some time before the accident tested one hour after the accident at .03 percent grams blood-alcohol content." Id. Moreover, "[d]rug paraphernalia was found in the back of [the driver's] car, though he claimed he knew nothing about it," and "[h]e admitted he may have been driving a little too fast for conditions." Id. Finally, "[a]fter the collision, [the driver] jumped out of the car and stomped and slammed the front end of his car while cursing; [the plaintiff], who was pregnant, screamed she was in labor." Id. The court held that "[a]lhough there may [have been] evidence of gross negligence . . . , there [was] no clear and convincing evidence that defendant's acts arose to the level sought to be punished under OCGA § 51-12-5.1." Id. at 444-45.

"[I]n automobile collision cases decided under OCGA § 51-12-5.1, punitive damages are not recoverable where the driver at fault simply violated a rule of the road." Fowler v. Smith, 516 S.E.2d 845, 848 (Ga. Ct. App. 1999) (internal quotation marks omitted). However, additional circumstances, such as violating a federal safety law, may create a genuine issue of material fact concerning punitive damages. See id. In the case at bar, it is undisputed that Bunton was cited for driving too fast for conditions and following too closely. (Pls.' Mem. Opp'n Defs.' Summ. J. Ex 8 (Bunton Dep. 87).) However, the court finds that there is additional evidence from which a jury could conclude that, at the time of the accident, Bunton was tired and had exceeded the FMCSR's hours-of-service rule. Further, as set forth above, there is evidence that Bunton repeatedly violated the hours-of-service rule. Moreover, the officer investigating the accident noted in his report that Bunton's logbook contained three violations. (Id. Ex. 12 (Duncan Dep. 15 Ex. 1-E).) As such, the court finds that there are

16

genuine issues of material fact concerning whether Bunton exhibited a conscious indifference to the consequences of his conduct. Based on the foregoing, the Defendants' motion for summary judgment on punitive damages is denied.

Therefore, it is

**ORDERED** that the Plaintiffs' motion for partial summary judgment, docket number 39, is denied. It is further

**ORDERED** that the Defendants' motion for partial summary judgment, docket number 40, is granted in part and denied in part.

**IT IS SO ORDERED.**

					s/Henry M. Herlong, Jr.
					United States District Judge

Greenville, South Carolina
April 3, 2006